1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9   Charlotte E. Griffin,                     )          No. CV-05-3940 PHX-DGC
                                              )
10              Plaintiff,                     )
                                              )
11  vs.                                       )          **ORDER**
                                              )
12  Scottsdale Unified School District No.    )
    48,                                        )
13                                            )
                Defendant.                     )
14  _____)

15          Plaintiff Charlotte Griffin and Defendant Scottsdale Unified School District No. 48

16  have filed motions for summary judgment.   The Court has reviewed the memoranda

17  submitted by the parties. Dkt. ##18, 19, 21, 22, 23, 24, 25-29.  For reasons discussed below,

18  the Court will deny Plaintiff's motion and grant Defendant's motion.

19  **I.      Background.**

20          Plaintiff was 72 years old when she was employed by Defendant as a teacher's aide

21  in 2002.  She began her employment in the classroom of teacher Judy Chamberlin at Pueblo

22  Elementary School.  In January of 2003, Chamberlin allegedly harassed Plaintiff on the basis

23  of age by stating that "even bus drivers know when to retire." Dkt. #26, Ex. 22.  Chamberlin

24  also explained to the class that Plaintiff would not sign a birthday card because she did not

25  celebrate birthdays.  Plaintiff, who is a practicing Jehovah's Witness, claims this constituted

26  religious harassment.  *Id.*

27          Defendant's Human Resources staff investigated Plaintiff's complaint regarding these

28  two incidents, determined that Chamberlin had not meant to offend Plaintiff, and reminded

Chamberlin of its anti-discrimination policies.  *Id.*, Ex. 6.  Defendant reassigned Plaintiff to work in the library so that Chamberlin and she were not in regular contact.  Chamberlin retired at the end of the 2002-2003 school year.  *Id.*

Plaintiff remained at Pueblo Elementary School during the 2003-2004 school year, assigned to the classroom of teacher Jennifer Henderson.  Dkt. #18 (Plaintiff's sworn statement to Dorothy Jim, ACRD compliance officer).[1]  Plaintiff alleges that she experienced harassment once at the beginning of the school year when Henderson asked Plaintiff to share her religion with the class.  *Id.*

In the summer of 2004, Plaintiff applied for a different job.  Defendant's Special Education Coordinator Lee Webster assigned Plaintiff to a position at Cherokee Elementary School, where Plaintiff worked with special education teacher Patti Geninatti and resource center teacher Mary Cree.  Dkt. #26, Ex. 1 at 30.  Plaintiff's job generally consisted of working with an autistic boy on a one-to-one basis.  *Id.*, Ex. 16.  In August of 2004, the boy's mother complained to Defendant that her child had wandered off while under Plaintiff's care.  *Id.*, Ex. 15.

In September of 2004, Plaintiff received a performance evaluation from Special Education Coordinator Webster that reflected the need for improvement in, among other areas, keeping track of children on the playground.  *Id.*, Ex. 8.  Plaintiff received improvement plans with instructions to focus on special needs children, and understood that lack of progress could lead to her termination.  *Id.*, Exs. 9-10.

Defendant subsequently received a complaint from the father of the boy that on September 22, 2004, Plaintiff failed to supervise the child at the end of the school day, allowing him to walk out of the school unaccompanied.  *Id.*, Exs. 11-12.  Defendant placed Plaintiff on administrative leave, conducted an investigation, and concluded that Plaintiff had

---

[1]Plaintiff's motion for summary judgment is an assortment of documents with no page numbers.  The Court will refer to the motion by its docket number and a description of the document.  The Court has considered all documents submitted by Plaintiff, whether attached to her motion for summary judgment or her response to Defendant's motion.

failed to supervise the student on at least two occasions. *Id.*, Exs. 13, 16.  Plaintiff appeared at a pre-termination meeting and explained her side of the story.  After hearing Plaintiff, Special Education Coordinator Webster concluded that Plaintiff had failed to supervise the student properly and that termination was warranted.  *Id.*, Exs. 17-18.  Plaintiff filed a grievance regarding her termination.  Defendant reviewed the matter, upheld Webster's decision, and terminated Plaintiff's employment on November 8, 2004.  *Id.*, Ex. 11 at 4.

Plaintiff appealed her termination to Lois Healey, Defendant's Special Education Services Administrator.  *Id.*, Ex. 21.  Healey upheld the termination.

Plaintiff filed a charge of discrimination with the Arizona Civil Rights Division ("ACRD") on December 17, 2004.  *Id.*, Ex. 22.  The ACRD dismissed Plaintiff's discrimination charge after conducting its own investigation.  *Id.*, Ex. 23.

Plaintiff filed this action on June 22, 2005.  Dkt. #1.  Count One of the Complaint alleges religious discrimination in violation of Title VII of the Civil Rights Act of 1964. Count Two alleges a violation of the Age Discrimination in Employment Act ("ADEA") for "revealing and alluding to the plaintiff's age by engaging in offensive comments and direct disparagement."  Dkt. #1, Ex. A.

**II.    Legal Standard.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248. Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

### III.    Analysis.

Both parties seek summary judgment. Dkt. #18, 25. Defendant asserts that Plaintiff's motion does not comport with Federal Rule of Civil Procedure 56, Local Rule of Civil Procedure 56.1(a), and evidentiary rules.  The Court agrees, but will not deny *pro se* Plaintiff's motion because of a failure to follow the rules.

Plaintiff's response to Defendant's motion consists of one sentence.  Dkt. #27 ("Ms. Griffin agrees that issues with Ms. Chamberlin, the following year at Pueblo, and at Cherokee should be thoroughly investigated").  Plaintiff attaches a statement of facts with no page numbers, in which she loosely responds to various exhibits of Defendant.  On the first page of the statement of facts, Plaintiff identifies seven "areas of disagreement": (1) Denial of charging Plaintiff with Child Endangerment, (2) Details regarding Plaintiff sent to file as "certified" prior to investigation, (3) Verbal and physical attacks in and out of the classroom, (4) Deliberate placement of Plaintiff in jeopardy, (5) Teacher rendering evaluations differently after religious affiliation, (6) Repetitive charges continue after proved untrue, (7) Defendant denies Chamberlin involvement. The Court will address these disputed areas to the extent they pertain to Defendant's motion and the claims in this case.

### A.    Discrimination.[2]

Plaintiff claims that Defendant terminated her on the basis of her age and religion. Courts apply the same analysis to wrongful termination cases arising under the ADEA and Title VII.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000).

To show disparate treatment under Title VII and the ADEA, a plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  "[T]he burden of production – but not persuasion – then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id*.

---

[2]Defendant argues that Plaintiff's claim is untimely because she did not file a charge of discrimination with the ACRD within 180 days of the allegedly discriminatory conduct. Dkt. #25 at 6-7.  But Plaintiff's disparate treatment claims appear to be based on her 2004 termination, which occurred less than two months before she filed the ACRD charge.

Defendant asserts that it terminated Plaintiff for failing to observe safe work practices after Plaintiff failed to supervise the autistic student she was assigned to watch. Dkt. ##25 at 7; 26, Ex. 17. Defendant has presented substantial evidence in support of this legitimate, nondiscriminatory reason.

Plaintiff's Performance Evaluation Report from September 9, 2004, signed by Lee Webster, noted an improvement in keeping track of assigned children, but rated Plaintiff's overall performance as "not satisfactory." Dkt. #26, Ex. 8. An accompanying Plan of Improvement stated that Plaintiff "needs to focus on special needs children" and that Plaintiff "needs daily directions for tasks related [to] special needs from other adults[.]" *Id.*, Ex. 9. A Performance Improvement Plan dated September 23, 2004, stated that Plaintiff had already lost track of an autistic student once and that a lack of progress could result in Plaintiff's termination. *Id.*, Ex. 10. Defendant has also submitted an affidavit from Lois Healy, Defendant's Special Education Services Administrator, which details the events that led to Plaintiff's termination. *Id.*, Ex. 11. Healy states that Defendant had received complaints from parents about Plaintiff's failure to supervise an autistic child on two occasions, including on September 22, 2004. *Id.*, Exs. 11, 12, 15. Webster conducted an investigation of the second incident and concluded that Plaintiff had failed to supervise the student and should be terminated, especially because Plaintiff had previously lost track of the same student and had been warned of the importance of watching this child. *Id.*, Exs. 11, 16.

Plaintiff shared her side of the story at a pre-termination meeting, after which Webster concluded that Plaintiff had failed sufficiently to rebut the charges. *Id.*, Ex. 17. After Plaintiff submitted a grievance over the proposed termination, Defendant convened a group including Webster, Cree, and Geninatti, which again concluded that termination was proper. *Id.*, Ex. 20. Defendant's Governing Board terminated Plaintiff's employment, and Healy upheld the termination on appeal. *Id.*, Ex. 21. Defendant clearly has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff.

Once a defendant articulates such a reason, the plaintiff must show that the reason is pretextual "either directly by persuading the court that a discriminatory reason more likely

motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). To show pretext indirectly, the plaintiff may offer "circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). The indirect evidence of pretext must be "specific" and "substantial." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). A plaintiff may not simply "deny the credibility of the employer's witnesses." *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986).

Plaintiff seeks to prove pretext indirectly. Her response is almost entirely devoted to denying responsibility for the events that led to her termination. She claims that she was given a teacher's aide position without adequate training, that watching the autistic child on the day in question was not her responsibility, and that she did not deserve negative performance reports because the child was making progress. The Court will address these issues in turn.

The parties dispute whether Defendant properly trained Plaintiff to work with autistic children. Webster states that Plaintiff had been trained by an autism specialist on August 10, 11, 18, and 25, with emphasis on the need to supervise the student carefully. Dkt. #26, Ex. 16. Plaintiff alleges that she was not trained on the dates indicated by Defendant (Dkt. #28, (Resp. to Ex. 11)) and, therefore, that there is a disputed issue of fact regarding the "deliberate placement of Plaintiff in jeopardy." Dkt. #28. While the parties may dispute the extent of Plaintiff's training, the dispute is largely immaterial because Plaintiff has provided no evidence, much less specific and substantial evidence, that the lack of training was related to her age or religion or that Defendant deliberately decided not to train her so that she would later fail to supervise the child and thus provide Defendant with grounds for termination.

Plaintiff also denies that her conduct on September 22, 2004 was wrongful, asserting that the classroom teacher, Patti Geninatti, was responsible for walking the student to his father. *See, e.g.*, Dkt. #28, (Resp. to Exs. 6, 11). Ms. Webster found, after an investigation

in which other employees and the student's father placed blame on Plaintiff, that Plaintiff had committed a grave error in judgment in failing to supervise the student properly.  Although Plaintiff claims that Webster's conclusion was incorrect, she asserts nothing more than her unsworn version of events on the day in question.  She has not presented specific and substantial evidence calling into question the veracity of Defendant's reason for her termination.  While Plaintiff points to complimentary comments in her September 9, 2004 evaluation and her own notes regarding the student's progress, such evidence does not amount to specific and substantial evidence.  Plaintiff's "subjective personal judgments do not raise a genuine issue of material fact."  *Schuler*, 793 F.2d at 1011.

Plaintiff asserts that while serving as a teacher's aide she was subjected to a few teacher comments that disparaged her age and religion.  The Ninth Circuit has held, however, that comments by non-decision-makers are insufficient to establish pretext.  *See, e.g.*, *Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003). Plaintiff admitted in her deposition that none of the supervisors involved in her termination made hostile comments about her age or religion.  Dkt. #26, Ex. 1 at 39-40, 102-04.  This testimony squares with Plaintiff's ACRD charge, which mentioned only two comments by Chamberlin in January of 2003 as the reason for her termination 21 months later.  *Id*., Ex. 22.  Chamberlin was not involved in Plaintiff's termination.

Additionally, when an employee is terminated by the same people who hired her and very little time elapsed between the hiring and firing, a "strong inference arises that there was no discriminatory action."  *Coghlan v. American Seafood Co.*, 413 F.3d 1090, 1096 (9th Cir. 2005) (quotations omitted).  The employer's willingness to hire the plaintiff is "strong evidence that the employer is not biased against the protected class to which the employee belongs."  *Id*.  Webster hired Plaintiff to begin work in August of 2004 and recommended she be fired in September of 2004.

In sum, Plaintiff has failed to provide specific and substantial evidence that Defendant's stated reason for her termination is unworthy of credence.  Because Plaintiff has

1    failed to make a sufficient showing of pretext, the Court will grant summary judgment.

2        **B.    Hostile Work Environment.**[3]

3        Plaintiff appears to allege that she was subjected to a hostile work environment

4    because of her religion and age.  Although it is unclear whether the ADEA allows a hostile

5    work environment claim, the Court will assume it does for purposes of this motion.  *See*

6    *Jamal v. Wilshire Management Leasing Corp.*, 320 F.Supp.2d 1060, 1081 (D. Or. 2004).  To

7    establish such a claim, a plaintiff must show that she experienced harassment so severe and

8    pervasive that it altered the conditions of employment and created a hostile or abusive work

9    environment.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

10        To determine whether conduct was sufficiently severe or pervasive, courts look at

11   "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity;

12   whether it is physically threatening or humiliating, or a mere offensive utterance; and

13   whether it unreasonably interferes with an employee's work performance.'"  *Faragher v.*

14   *City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris*, 510 U.S. at 23).  "The

15   required level of severity or seriousness varies inversely with the pervasiveness or frequency

16   of the conduct."  *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001)

17   (quotations omitted).  "Simple teasing, offhand comments, and isolated incidents (unless

18   extremely serious) will not amount to discriminatory changes in the terms and conditions of

19   employment."  *Id.* (quotations omitted).

20        On January 12, 2003, Chamberlin told the class that Plaintiff "does not sign birthday

21   cards."  *See* Dkt. #26, Ex. 22.  Plaintiff testified in her deposition that she did not find this

22   remark offensive.  *Id.*, Ex. 1 at 15.  On January 15, 2003, Chamberlin stated that "even bus

23

24   _____

[3]Defendant argues that Plaintiff's claim is untimely because it relies on instances of

25   harassment that occurred more than 180 days before Plaintiff filed her charge with ACRD.
     When a Plaintiff alleges a hostile work environment claim, she can use as evidence instances

26   of harassment that fall outside the limitations period so long as one instance of harassment
     falls within the period.  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122

27   (2002).  Plaintiff has pleaded that she was harassed in August or September of 2004, within

28   180 days of her December 17, 2004 filing with ACRD.

1  drivers know when to retire." *Id.*, Ex. 22.  These were the only instances of harassment
2  Plaintiff reported during the 2002-2003 school year.  Plaintiff testified that no other
3  employees made discriminatory or derogatory remarks about her age. *Id.*, Ex. 1 at 12. While
4  Plaintiff claims in her response that she experienced further harassment by Chamberlin, she
5  has presented no evidence of such harassment and her complaints to Defendant, her sworn
6  statements to the ACRD, and her deposition identified only these two events. *Id.*, Exs. 1, 6,
7  22; Dkt. #18.

8      Plaintiff also alleges that she was harassed in August of 2003 when a different teacher
9  asked her to share her religious affiliation with a class. Dkt. #18 (Plaintiff's sworn statement
10 to Dorothy Jim, ACRD compliance officer).  There are no other reported incidents of
11 harassment during the 2003-2004 school year.

12     The final incident occurred in August or September of 2004, when Mary Cree tried
13 to convince Plaintiff to wear a voting pin and vote in a local election.  Plaintiff claims that
14 as a result of the pressure to vote, Plaintiff "had to get real frank with them and tell them it
15 was against [her] religion."  Dkt. #26, Ex. 1 at 102-04.  Plaintiff admitted, however, that
16 Cree's remarks were not discriminatory or derogatory. *Id.*, Ex. 1 at 39-40.

17     The Court concludes that no reasonable jury could find that Plaintiff was subjected
18 to a hostile work environment.  Four incidents spread over three school years and two
19 schools simply are not so severe or pervasive as to alter the conditions of Plaintiff's
20 employment.  Moreover, while Chamberlin's comment regarding Plaintiff's age was
21 offensive, it is questionable whether any reasonable person would find the other three
22 comments offensive at all.  At most, the four comments were "mere offensive utterances" not
23 actionable under Title VII or the ADEA. *Faragher*, 524 U.S. at 787-88.

24     Because Plaintiff has failed to produce evidence from which a reasonable jury could
25 conclude that she was subjected to a hostile work environment, the Court will grant summary
26 judgment in Defendant's favor.

27     **C.    Plaintiff's Motion for Summary Judgment**.
28     The facts and evidence make clear that Defendant is entitled to judgment as a matter

1    of law.  The Court therefore will deny Plaintiff's motion for summary judgment.

2        **IT IS ORDERED:**

3            1. Defendant's motion for summary judgment (Dkt. #25) is **granted**.

4            2. Plaintiff's motion for summary judgment (Dkt. #18) is **denied**.

5            3. Defendant's motion to strike (Dkt. #21) is **denied**.

6            4. The Clerk of the Court is directed to terminate this action.

7        DATED this 20th day of February, 2007.

8

9

10

11
                                    _____
12                                          David G. Campbell
                                       United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28